Kottmyer, J.
After receiving default judgments against the obligor and guarantors of two promissory notes, the plaintiff, Sheila M. Astuccio (“Astuccio”), moved to charge Family Mutual Savings Bank, Trustee of the accounts of defendant R.K. Ahern Co., Inc., and requested an evidentiaiy hearing to determine the sum the trustee should be charged. On October 27, 1998, this Court (Whitehead, J.) found that although there was $52,820.06 in the account when service of process was made on the bank on September 28, 1991, the bank was only chargeable for $349.07, the sum remaining in the account on October 7, 1991, when the bank located the account [9 Mass. L. Rptr. 97). Astuccio appealed and the Court of Appeals reversed holding that plaintiff was entitled to an evidentiary hearing “to determine whether knowledge of the service of process should be imputed to the agents of the trustee who allowed withdrawals to be made on the account after service.” Astuccio u. R.K. Ahern Co., Inc., 50 Mass.App.Ct. 662 (2001). After trial on the issue, I make the following findings of fact and rulings of law. [1]
A. Findings of Fact
1. On or about August 30, 1991, Family Mutual Savings Bank (“Family Mutual") acquired certain assets of the Lowell Institution for Savings, including the account at issue in this case, pursuant to an agreement with the Federal Deposit Insurance Corporation (“FDIC”). There was no interruption in service. As of August 30, 1991, employees of the Operations Department of the Lowell Institution for Savings and of its Bradford branch became employees of Family Mutual.
2. On September 27, 1991, Astuccio filed an action against R.K. Ahern Co., Inc., Robert Ahern and Roland Couillard Corporation seeking to recover on two promissoiy notes. R.K. Ahern Co., Inc. was the obligor on the notes and they were guaranteed by the defendants Robert K. Ahern and Robert Couillard Corporation.
3. On September 27, 1991, Astuccio obtained a trustee process attachment on all funds of the three defendants in possession of Family Mutual Savings Bank (the “Trustee”). On Saturday, September 28, 1991, Astuccio caused the trustee summons to be *297 served by delivering a copy to Ann English, a customer service representative, at the Bradford branch of Family Mutual.[2] English was the person responsible for receiving service of process at that branch on that date and accepted service as agent for the bank.
4. Bank policy required employees receiving a summons to initial the time and date of receipt of service, to call the Operations Department of Family Mutual at its main office in Haverhill, Massachusetts, so that a hold could be placed on the accounts and to forward the summons to the Operations Department by interoffice mail.
5. The Operations Department was not open on Saturday. In the ordinary course of business, items placed in inter-office mail on Monday morning would be received at the main office before noon.
6. On August 27, 1997, Astuccio obtained a default judgment against R.K. Ahern Co., Inc. in the amount of $699,764.30. On September 23, 1997, she filed a motion to charge the trustee.
7. When trustee process was served on the bank on September 28, 1991, there was $52,820.06 in the account of R.K. Ahern Co., Inc. On October 7, 1991, the balance in the account was $349.07.
8. For reasons which are unclear, the Operations Department first learned of the trustee process when a second summons was served on the main office on Wednesday, October 2, 1991, at 10:15 a.m. In 1991, Linda Lamb was the Operations Manager at Family Mutual. In October of 1991, the Operations Department and data center for the accounts acquired from the Lowell Institution for Savings were still in a separate building. After Lamb received the trustee summons, she made a telephone call to the Operations Department that served the accounts acquired from the Lowell Institution for Savings and asked that the files be scanned for accounts in the names listed on the trustee summons. She was advised that there were no accounts in those names. A second search on the same day yielded the same result. In fact, there was an account in the name of R.K. Ahern Co., Inc., but there was a typographical error on the registration card which listed the account in the name of “R.K. Ahemco., Inc.” Computer generated monthly statements for the account correctly stated the name of the account as “R K Ahern Co., Inc.”
9. On October 7, 1991, the trustee received a letter from the FDIC enclosing the summons. Another search was made and the account was located. On that date, the balance in the account was $349.07.
10. Withdrawals from the account after the summons was served included a withdrawal in the amount of $20,000 on October 1, 1991, and a withdrawal in the amount of $15,500 on October 2,1991. There were no withdrawals on September 28 or September 29. On Monday, September 30, various checks were honored, leaving a balance of $43,747.27
11. In November of 1992, Robert Ahern attempted to negotiate cashier’s check no. 68891 in the amount of $15,300. The cashier’s check dated March 23, 1990 had been purchased with funds drawn from the account of R.K. Ahern Co., Inc., and was payable to Robert Ahern. The teller to whom he presented the check noted that the check was stale and brought it to Lamb. Lamb realized that there was a hold on the account. When she refused to cash the check, Ahem took it back without permission. However, the check was never cashed. On March 23, 1993, it was listed as returned to the FDIC as an unclaimed official item.[3] See G.L.c. 200A, §6B. Family Mutual was aware that there was an attachment of funds on the account on which it was drawn.
12. On December 21, 1998, this Court (Whitehead, J.) allowed an exparte motion for attachment of the $15,300 as funds of Robert K. Ahern. The supplemental summons was served on January 14, 1999. On or about March 10, 1999, the trustee stated that at the time of service it had no funds of the named defendant. On February 19, 2002, plaintiff filed “a motion for special trustee attachment” seeking an attachment of the $15,300 which was allowed, after hearing, on March 1, 2002. That summons was vacated on March 21, 2002. A motion for reconsideration was then allowed as the parties had learned that Robert Ahem had opened a new account and deposited funds in the bank.
Conclusions of Law
1. G.L.c. 246, §27 provides protection from liability to a trustee when he makes a payment in good faith after receipt of service, but before knowledge of service of process.
2. The burden of proof is on the plaintiff to show that the trustee should be charged in an amount greater than the sum set forth in its answer. Workers’ Credit Union v. Hannula, 285 Mass. 159, 160 (1934).
3. It is the duty of a bank or other entity served with trustee process “to make such service known within the shortest time reasonably practicable, to all their agents” having occasion to act in connection with the funds subject to the attachment. Spooner v. Rowland, 86 Mass. 485, 486-88 (1862).
4. A plaintiff cannot by trustee process attach any money held by the trustee for the defendant unless the money is due absolutely and without any contingency to the defendant and was so held by the tmstee at the exact time of service of the trustee summons. Singorella u. Boston, 330 Mass. 257, 260 (1953); Jordan v. Lavin, 319 Mass. 362, 365 (1946).
DISCUSSION
The statute, G.L.c. 246, §27, protects a trustee from liability when he makes a payment in good faith of trusteed funds after receipt of service, but before knowledge of service of process. In its opinion which is law of the case, the Court of Appeals stated that the *298 pertinent inquiry is “whether knowledge of the receipt of trustee process by the bank employee [English] should have been imputed to the trustee’s employees who made payments from the trustee account after the service but before the trustee placed a hold on the account and if so when.” Astuccio, 50 Mass.App.Ct. at 665. The Court of Appeals identified the following material issues of fact: “to whom did the branch employee receiving the trustee process summons give notice of receipt of the summons, when did she give notice, was the action taken by her reasonable and was there neglect or unreasonable delay in discovering this account and placing a hold on it by the trustee.” Id. at 666.
There is no evidence that English called the Operations Department or otherwise took steps to ensure that the trustee attachment was effectuated when the bank opened for business on Monday. Her failure to do so was unreasonable given that as a branch office employee she could neither initiate a search for the accounts nor place a hold on the accounts. Lamb did not receive the summons until it was served at the main office on October 2, and her initial efforts to locate the account were unsuccessful presumably because of the typographical error on the registration card. In view of the fact that the name of the account was correct on the computerized monthly statements, and the account was in fact located on October 7, 1991,1 find that English’s failure to notify the Operations Department and the Bank’s failure to locate the account and place a hold on it on Monday, September 30, 1991, was negligent. English’s knowledge of the receipt of trustee process is imputed to the agents of the bank making payments on the account as of midday on Monday, September 30, 1991.
It is not necessary to reach the question whether the trustee should be charged with amounts paid out on Saturday and Sunday, September 28 and 29, 1991 when the Operations Department was not open and there was no vehicle for putting a hold on the account. No payments were made until Monday, September 30. On that date a number of checks were honored. The statute contemplates that a bank not be charged until the bank has had a reasonable time after service to locate the account and effectuate a hold on an account. See Spooner, supra. I therefore find that the delay in locating and putting a hold on the account after mid-day on September 30, 1997, was unreasonable. The record does not establish the times at which payments were made on checks presented on September 30, 1991. Accordingly, given that plaintiff has the burden of proof, I find that the bank should be charged with $43,747.27, the balance in the account as of the close of business on September 30, 1991.[4]
The trustee argues that interest should not be added to the judgment because the account did not bear interest.[5] Where, as here, however, the trustee’s negligence deprived the plaintiff of funds which, but for the bank’s negligence, would have been paid to her when the court acted on the motion to charge, I find that plaintiff is entitled to interest at the statutory rate from that date, October 27, 1998. See Auburn Knitted Fabrics v. Globe Indem. Co., 58 Mass.App.Dec. 1, 14 (1976).
ORDER
For the reasons stated herein, judgment shall enter in favor of the plaintiff charging the trustee in the amount of $43,747.27, plus interest at the statutory rate from October 27, 1998.

 Both parties waived any right to a jury trial. The parties also stipulated to the admissibility of all documents in the record appendix submitted to the Appeals Court.

 The Appeals Court has ruled that Family Mutual waived any issue as to the sufficiency of service of process.

 Nile check itself was in Ahern’s possession. The return to the FDIC was accomplished via a list of unclaimed items. (Ex. 1.) The evidence at trial suggested at least a possibility that the funds ($15,300) may be recovered from the FDIC (Ex. 2), but neither party has made an effort to recover them.

 The $15,300 turned over to the FDIC was not held by the trustee without contingency at the exact time that any trustee summons was served.

 Plaintiff has not adduced evidence that the account was interest bearing. The monthly statements do not show any payments of interest.